UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Lidia G. Jablonski,<br><br>  Plaintiff<br><br>v.<br><br>Wal-Mart Stores, Inc.,<br><br>  Defendant | 2:13-cv-01510-JAD-VCF<br><br>**Order Denying Motion to Strike, Granting Motion for Summary Judgment, and Closing Case**<br><br>[ECF Nos. 58, 77] |

    Lidia G. Jablonski sues her former employer, Wal-Mart Stores, Inc., for disability discrimination and related claims. Walmart argues that it is entitled to summary judgment because Jablonski is not disabled and because she voluntarily resigned after Walmart offered her the only available position in the store.[1] Walmart also moves to strike a portion of Jablonski's opposition.[2] Because Jablonski's claims either lack evidentiary support or fail as a matter of law, I grant Walmart's motion for summary judgment, deny its motion to strike portions of Jablonski's opposition, enter judgment for Walmart and against Jablonski, and close this case.[3]

**Background**

    Jablonski worked at Walmart for nearly sixteen years from October 1996 until September 2012 and in several locations, including Georgia, Texas, and most recently, Las Vegas. In 2008, she transferred to the Walmart store located at 7445 S. Eastern in Las Vegas where she worked as a supervisor in the dairy, frozen, and meat departments.[4] In June 2010, Jablonski received and acknowledged a job description for this department-manager position, including a description of

---

[1] ECF No. 58.

[2] ECF No. 77.

[3] I find these matters suitable for disposition without oral argument. LR 78-1.

[4] ECF No. 58-1 at 16.

essential job functions.[5] The physical-activities portion states that the job requires the ability to move, lift, carry, and place merchandise and supplies up to 25 pounds without assistance, to sit and stand for long periods of time, and to squat, kneel, and crawl for longer periods of time.[6]

On October 19, 2011, Jablonski was injured on the job when a box of chicken that she was attempting to lift fell off an elevated pallet onto her.[7] Jablonski submitted a workers' compensation claim,[8] which was accepted by Walmart's third-party workers' compensation claims administrator, Sedgwick.[9] She continued to work in a light-duty capacity stocking and cleaning from October 20 to December 27, 2011,[10] when she was declared totally temporarily disabled and approved for a 12-week FMLA leave from December 28, 2011 to April 1, 2012.[11] Jablonski took a personal leave of absence when her FMLA leave expired.[12] Per Walmart's policy, associates on personal leave or who return to work after FMLA leave has expired are not guaranteed their previous position.[13]

On June 6, 2012, Nevada Designated Disability Examiner Brian K. Fife released Jablonski to return to light-duty work with six restrictions: no lifting over 10 pounds, no repeated bending or stooping, no twisting, limited reaching or working above head, and no pushing or pulling over 15 pounds.[14] Walmart has a Temporary Alternate Duty (TAD) policy under which it provides a

---

[5] *Id.* at 17.

[6] *Id*. at 17, 55.

[7] ECF No. 26 at ¶ 21.

[8] ECF No. 58-1 at 67.

[9] *Id.* at ¶ 71.

[10] ECF No. 26 at ¶¶ 24–27.

[11] ECF No. 58-1 at 73–74.

[12] *Id.* at 82–92.

[13] *Id.* at 50 (letter to Jablonski explaining that associates on personal leave are not guaranteed their previous positions when they return to work), 82 (FMLA policy).

[14] *Id.* at 94.

temporary position or modified job duties to an associate with a work-related injury who has been released to modified duty by a treating physician.[15] TAD positions expire after 90 days or when the employee has reached maximum medical improvement (MMI) or her restrictions are modified.[16] When Walmart received Jablonski's physician's release, it offered and Jablonski accepted a TAD position as a cashier for which she would continue to receive her supervisor pay.[17] Jablonski began work in the TAD position on June 16, 2012.

Shortly after Jablonski returned to work, Dr. Fife provided a letter identifying three permanent restrictions: no lifting over 30 pounds, no repeated bending or stooping, and no repeated twisting.[18] On July 4, 2012, Walmart filled a dairy, frozen, and meat department supervisor position.[19] Two days later, Sedgwick denied Jablonski's request for a permanent light-duty job assignment, noting that, although it had received Dr. Fife's June 18th report indicating that Jablonski has permanent restrictions, both of her functional-capacity evaluations were invalid, so she was presumed to have reached maximum medical improvement and did not qualify for permanent light-duty employment.[20] Jablonski remained in the TAD cashier position.

On August 27, 2012, Dr. Fife released Jablonski from treatment to work full duty without restrictions based on the two functional-capacity evaluations that were deemed invalid because Jablonski had exerted less than maximum effort.[21] Four days later, Sedgwick sent Jablonski a letter confirming that, based on the two invalid evaluations and Dr. Fife's full-duty work release, Jablonski was not entitled to permanent light-duty employment and her workers' compensation case was now

---

[15] *Id.* at 47.

[16] ECF No. 58-1 at 47.

[17] *Id.* at 96; ECF No. 58-2 at 3.

[18] ECF No. 58-1 at 98; 100.

[19] ECF No. 58-2 at 15.

[20] ECF No. 58-1 at 102.

[21] *Id.* at 104.

closed.[22] Jablonski remained in the TAD cashier position.

Nine days before the 90-day TAD period expired, on September 7, 2012, Dr. Fife changed his recommendation, now recommending that Jablonski be permanently placed on light or modified duty with three permanent restrictions: no lifting over 30 pounds, no prolonged standing, and no repeated bending, lifting, or twisting.[23] In the letter, Dr. Fife explained that Jablonski had returned to his office complaining of increased lower-back pain and presented him with a copy of a permanent partial disability evaluation completed by Dr. Aleesha Fischer. Because he found Dr. Fischer's examination findings to be consistent with his own, he revised his earlier recommendation.[24]

Because the TAD period was drawing to a close and Dr. Fife recommended that Jablonski work light duty on a permanent basis, Jablonski's supervisors Patricia Gilbert (store manager) and Daniela Kirlin (assistant store manager) met with Jablonski to discuss the situation and offered her a part-time cashier position.[25] This position was the only vacant position at the store at the time and would not have required Jablonski to engage in restricted activities.[26] Jablonski declined, stating that she could only accept the cashier position on a full-time basis.[27] On September 11, 2012, Jablonski was "voluntar[ily] terminated."[28]

Jablonski sues Walmart for (1) disability discrimination under Title VII and Nevada state law, (2) failure to accommodate and engage in good-faith interactive process, (3) coercion, (4)

---

[22] *Id.* at 106.

[23] ECF No. 58-2 at 18.

[24] *Id.*

[25] *Id.* at 23. Gilbert testified at her deposition that the position was considered full time at 38 hours per week, while Jablonski testified at her deposition that the position was part time and only 24 hours per week. At this juncture, I view the evidence in the light most favorable to Jablonski and accept her testimony that the offered position was part time.

[26] *Id.*

[27] ECF No. 58-1 at 26.

[28] *Id.* at 108.

wrongful termination, and (5) constructive discharge. Walmart moves for summary judgment, arguing that Jablonski's discrimination, failure-to-accommodate, and coercion claims fail because Jablonski is not disabled as a matter of law, and she was not terminated because of her disability, and Walmart offered her an accommodation for her medical restrictions—the part-time cashier position. Walmart argues that Jablonski's wrongful-termination and constructive discharge claims fail because they lack evidentiary support and because Jablonski had alternative statutory remedies under state and federal law that bar her from seeking relief under these common-law tort theories.

## Discussion

### A. Summary-judgment standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[29] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[30] If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed and the case must proceed to the trier of fact.[31]

If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[32] The court may only consider facts

---

[29] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[30] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[31] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[32] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

1  that could be presented in an admissible form at trial in deciding a motion for summary judgment.[33]

2  Walmart moves to strike all unauthenticated exhibits to Jablonski's opposition and her

3  statement of facts because she cites only the allegations in the second-amended complaint, not record

4  evidence.[34] I decline to strike the exhibits to Jablonski's opposition and I exercise my discretion to

5  consider this evidence because it could be presented in an admissible form at trial.[35] I also decline to

6  strike the facts section from Jablonski's opposition, but I recognize that the allegations in the

7  complaint are not evidence and are not entitled to the presumption of truth at this stage.

**B.     Disability discrimination under the ADA**

The *McDonell Douglas* burden-shifting framework applies to Jablonski's state and federal discrimination claims.[36] Under this framework, the plaintiff has the initial burden to establish a prima facie case of discrimination.[37] To survive summary judgment, a disability-discrimination plaintiff must produce evidence showing: (1) that she is a disabled person within the meaning of the ADA, (2) that she is qualified, and (3) that the employer terminated her because of her disability.[38]

The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.[39] If the employer does so, the plaintiff must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the

---

[33] FED. R. CIV. P. 56(c).

[34] ECF No. 77 at 2.

[35] FED. R. CIV. P. 56(c)(2).

[36] NRS 613.330 is almost identical to the ADA, and courts apply the same burden-shifting framework. *Apececle v. White Pine Cty.*, 615 P.2d 975, 977 (Nev. 1980).

[37] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[38] *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1418 (9th Cir .1996).

[39] *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002) (emphasis in original).

employer's proffered explanation is unworthy of credence."[40] The plaintiff's "evidence must be both *specific and substantial* to overcome the legitimate reasons put forth by" her employer.[41]

**C.     Walmart is entitled to summary judgment on Jablonski's discrimination claim.**

Even if Jablonski could make a prima facie showing of discrimination, Walmart offers a nondiscriminatory basis for her termination: she was offered the only available position in the store at the end of her TAD period and she refused it. Jabloski argues that the basis for her termination is pretextual because the report from her exit interview notes that she was "no longer job protected,"[42] Walmart made no attempt to accommodate her besides offering her the cashier position, and Walmart filled her position with another employee.[43]

The manager comments on Jablonski's exit-interview report state:

> Lidia was offerd a job offer of a cashier from her current position of lead in dairy frozen. Lidia has been out on [leave of absence] due [to] work related injury and has returned to work after 20 weeks and is no longer job protected and has refused the job offer of a cashier today so she is being let go due to the refusal we have no other positions available in our location at this time.[44]

This is not the smoking gun that Jablonski makes it out to be. As manager Patrica Gilbert explained at her deposition and as reflected by Walmart's FMLA policy, if an associate comes back from FMLA within the leave period, the associate is "job protected," meaning that she is guaranteed her same position.[45] The complained-of comment simply refers to the fact that Jablonski's FMLA and personal leave had already expired by this time, so she was no longer guaranteed her old job and was thus offered the only available position as a cashier. When read in context, a reasonable jury could

---

[40] *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

[41] *Aragon*, 292 F.3d at 659 (internal citations omitted) (emphasis in original).

[42] ECF No. 74-2 at 2.

[43] ECF No. 74 at 16–18.

[44] ECF No. 58-1 at 108.

[45] ECF No. 58-2.

not find that this comment gives rise to an inference of pretext.

The same is true of the fact that Walmart filled Jablonski's position. Jablonski's position was filled after her FMLA leave expired and before Jablonski was released to work full duty. At the time Jablonski's position was filled, (1) Dr. Fife had identified her as having three permanent restrictions that prevented her from being able to perform the essential functions of her former job,[46] and (2) Jablonski had requested a permanent light-duty job—not her supervisor job with accommodations.[47] Finally, Jablonski does not cite any evidence to support her argument that there were other accommodations available that she requested and was not offered, i.e. that she requested a supervisor position at another location, there was such a position available, and Walmart refused to transfer her.[48] So, even if Jablonski could make a prima facie showing of discrimination, Walmart is entitled to summary judgment on Jablonski's discrimination claim under the ADA and Nevada's state-law analog because she fails to offer specific and substantial evidence to overcome Walmart's explanation for her termination.[49]

**D.     Failure to accommodate and failure to engage in the interactive process in good faith.**

The ADA "prohibits an employer from discriminating against a qualified individual with a disability by failing to make 'reasonable accommodations to the known physical or mental limitations' of that individual"[50] unless the accommodation would impose an undue hardship on the employer.  If an employee requests accommodation or the employer recognizes the need for

---

[46] ECF No. 58-1 at 98; 100.

[47]  ECF No. 58-1 at 102.

[48] Jablonski cites only her deposition testimony that she had previously worked at other Walmart locations; she does not explain the basis for these transfers.

[49] The parties dispute whether Jablonski was terminated or resigned. The exit-interview report classifies her departure as a "voluntary termination" and states that Jablonski is eligible for rehire, so it appears that Jablonski resigned. But even if Jablonski was terminated, she fails to rebut Walmart's non-discriminatory basis for her separation, and Walmart is still entitled to summary judgment.

[50] *Willis v. Pacific Maritime Ass'n*, 244 F.3d 675, 680 (9th Cir. 2001) (quoting 42 USC § 12112(b)(5)(A)).

accommodation, the employer is required to engage in an interactive process with the employee to identify and implement appropriate, reasonable accommodations.[51]  An employer is liable for failure to engage in the interactive process in good faith if it is responsible for the breakdown in the interactive process and a reasonable accommodation without undue hardship to the employer would otherwise have been possible.[52]

### 1.   Jablonski's failure-to-accommodate claim lacks evidentiary support.

In addition to the TAD policy, Walmart has an Accommodation in Employment Policy, which states that Walmart will provide an associate with a disability reasonable accommodations to enable her to perform the essential functions of her job.[53]  It further states that an associate with a medical condition that is not a disability but prevents her from performing her job may be eligible for a job aid or environmental adjustment, a leave of absence, or a transfer to another open position.[54]  The policy explains that a job aid or environmental adjustment "does not include creating a job, removing or reducing an essential function of [the] job, transferring a portion of [the] job to another associate, light duty or temporary alternative duty, or reassignment."[55]  The policy also states that, in some circumstances, a reasonable accommodation may include reassignment to a vacant job for which the associate is qualified.[56]

Jablonski argues that Walmart failed to accommodate her by allowing her to stay in the TAD position, offering to transfer her to another Walmart store, and offering her reasonable

---

[51] *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc) (vacated on other grounds by 525 U.S. 391 (2002)).

[52] *Id.* at 1117.

[53] ECF No. 58-1 at 40.

[54] *Id.*

[55] *Id.* at 41.

[56] *Id.*

accommodations in her former supervisor position.[57] First, Walmart's TAD policy states that TAD positions expire after 90 days or when the employee reaches maximum medical improvement or her restrictions are modified.[58] Walmart was not required to continue to allow Jablonski to remain in the temporary position.[59] Nor was it required to transfer her to another location because its accommodation policy states nothing about transferring employees in Jaablonski's situation between stores, and Jablonski has offered no evidence that it regularly did so. Jablonski raises no argument that the cashier position did not accommodate her medical restrictions. And she readily testified at her deposition that she declined the position solely because it was part-time—not because her disability prevented her from performing the job.[60]

At the time Jablonski's previous position was filled, she could not fulfill the essential job functions she needed to perform it, so Walmart was not required to pull her out of the TAD position and offer it to her. Jablonski requested to be placed in a permanent light-duty position at that time—not to be returned to her previous position with or without accommodation; regardless, she has presented no evidence that she could have performed the essential functions of that job even with accommodation. Additionally, Jablonski's former position was no longer available when her TAD position was expiring and she was offered the cashier position, and the law did not require Walmart to create a new supervisor position or bump another employee out of that position to create a position for Jablonski.[61]

---

[57] ECF No. 74 at 21. Jablonski did not request any of these accommodations at the exit interview.

[58] ECF No. 58-1 at 47.

[59] *See Hendricks-Robsinson v. Excel Corp.*, 154 F.3d 685, 697 (7th Cir. 1998) (holding that the ADA does not require permanent assignment to a temporary light-duty job); *see also Graves v. Finch Pruyn & Co.*, 457 F.3d 181 (2d Cir. 2006) (holding that the ADA did not require employer to create a temporary position or make it permanent).

[60] ECF No. 58-1 at 26.

[61] *White v. Yew York Int'l Corp.*, 45 F.3d 357, 362 (9th Cir. 1995) (an employer is not required to reassign disabled employee to an occupied position) (citing 29 C.F.R. §1630, App. § 1630.2(o)).

### 2. *No evidence supports Jablonski's claim that Walmart failed to engage in the interactive process.*

Jablonski also alleges that Walmart "was completely unwilling to engage in the interactive process to find [her] a reasonable accommodation."[62] To the extent that this is a separate claim, Jablonski cites zero evidence to support it, and it is belied by the record, which reflects that Walmart engaged in good faith in the interactive process with Jablonski as soon as she requested an accommodation and it recognized the need for one: it approved 12 weeks of FMLA leave and, when that leave was expiring, reached out to Jablonski to see if she needed to request an additional leave of absence, which she did and Walmart granted.[63] When that leave expired, Walmart offered and Jablonski accepted a temporary cashier position under Walmart's TAD program for which she received her supervisor pay.[64] After Jablonski was given a permanent light-duty work release and shortly before her TAD position was set to expire, two supervisors met with her and offered her the only available position in the store, which accommodated her medical restrictions.[65] Accordingly, Walmart is also entitled to summary judgment on Jablonski's claim for failure to accommodate and failure to engage in the interactive process in good faith.

### E.   Jablonski's coercion claim fails.

The ADA also prohibits retaliating against an employee for engaging in protected activity under the ADA and coercing, intimidating, threatening, or interfering with an individual's exercise of any rights under the ADA. Though Jablonski styles her claim as one for coercion, this claim is more accurately construed as a retaliation claim.[66] To prevail on her retaliation claim, Jablonski

---

[62] ECF No.74 at 21.

[63] ECF No. 58-1 at 82–92.

[64] *Id.* at 96; ECF No. 58-2 at 3.

[65] ECF No. 58-2 at 23.

[66] The case Jablonski cites for the elements of this claim also dealt with an ADA retaliation claim. ECF No. 74 at 21 (citing *Gallagher v. San Diego Unified Port. Dist.*, 14 F. Supp. 3d 1380 (S.D. Cal. 2014)).

must show that she engaged in protected activity under the ADA, Walmart subjected her to adverse employment action, and there is a causal link between the two.[67]  The burden of production then shifts to Walmart to advance a legitimate, nonretaliatory reason for any adverse employment action taken against Jablonski.  If Walmart does so, then Jablonski has the ultimate burden of showing that Walmart's explanations are pretextual by demonstrating that its proffered reason is unworthy of credence or retaliation was the more likely motivation.[68]

Even assuming that Jablonski has made a prima facie case, Walmart offers a nonretaliatory basis for her termination: she refused the only available permanent position.  Jablonski has failed to come forth with specific and substantial evidence to show that this explanation is unworthy of credence.  Jablonski simply responds (without citing to the record or briefing) that she "has previously presented facts, supra, which establish that [her] termination was causally related to her disability and workers' compensation claim."[69]  Jablonski filed her workers' compensation claim nearly a year before she was terminated, and her termination occurred when her TAD position expired.  This timeline does not raise an inference that Jablonski was terminated for her disability or because she requested an accommodation or filed a workers' compensation claim.  Because Jablonski lacks evidence to show pretext, Walmart is entitled to summary judgment on this claim.

**F.  Jablonski's remaining state-law claims for wrongful termination and constructive discharge fail.**

Nevada law does not recognize public-policy claims when there is an adequate and comprehensive statutory remedy available.[70]  Thus, Walmart is correct that, to the extent claims four and five are based on Jablonski's ADA claims, they are not cognizable because these claims may be adequately addressed under the ADA and NRS § 613.330.  Jablonski concedes this point, but she maintains that her wrongful-termination claim survives because it is based on a theory that she was

---

[67] *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004).

[68] *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062–63 (9th Cir. 2002).

[69] ECF No. 74 at 21.

[70] *See Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788 (Nev. 2009).

terminated for filing a workers' compensation claim and that her constructive-discharge claim is not barred because Nevada law "creates an exception to the alternative remedy rule for instances where a Plaintiff's claim may not be adequately addressed by the statutory remedy."[71]

Jablonski is correct that Nevada recognizes a tortious discharge claim for "retaliatory discharge by an employer stemming from the filing of a workmen's compensation claim by an injured employee."[72] But Jablonski's wrongful-termination claim fails for the same reason her ADA claims fail: the evidence shows that Jablonski's employment ended because she refused to accept the only permanent available position in the store, not because she filed a workers' compensation claim. Jablonski again relies on the phrase "job protected" in the exit-interview report. As explained above, this phrase simply conveyed that Jablonski was no longer gauranteed her old job; it does not support an inference that Walmart terminated her for filing a workers' compensation claim. Jablonski's unlawful-termination claim thus suffers the same fate as her discrimination claims.

Jablonski does not explain why her constructive-discharge claim is not adequately addressed through the ADA or Nevada's state-law analog, and I find that it is because it is based on the same allegations as her discrimination claims. But even if this claim were not barred under the alternative-remedy rule, it fails on its merits. To prevail on a claim for constructive discharge in Nevada, Jablonski must show that she was subjected to working conditions "so intolerable and discriminatory that a reasonable person in the employee's position would feel compelled to resign."[73] The only evidentiary support Jablonski offers for this claim is her deposition testimony that she asked a supervisor for assistance "several times" but the supervisor refused and pointed out that Jablonski could lift up to ten pounds per her restrictions.[74] Even construed in the light most favorable to Jablonski, these allegations do not even approach the constructive-discharge standard. Walmart is thus entitled to summary judgment on Jablonski's fifth and final claim.

---

[71] ECF No. 74 at 27.

[72] *Martin v. Sears, Roebuck and Co.*, 899 P.2d 551, 554 (Nev. 1995).

[73] *Id.* at 553.

[74] ECF No. 74 at 27–28.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Walmart's motion to strike **[ECF. No. 77] is DENIED.**

IT IS FURTHER ORDERED that Walmart's motion for summary judgment **[ECF No. 58] is GRANTED**. The Clerk of Court is directed to enter judgment for Walmart and against Jablonski and CLOSE THIS CASE.

Dated this 16th day of February, 2017.

_____
Jennifer A. Dorsey
United States District Judge